**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-2815-WJM-GPG

STEPHANIE EINFELD,

       Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

       Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS OR,
ALTERNATIVELY, TO COMPEL ARBITRATION**
_____

This dispute belongs in arbitration. Plaintiff, a credit card hold holder, is bound by her Cardmember Agreement with Defendant JPMorgan Chase Bank, N.A. ("Chase"), which, in 2019, was amended to include a binding arbitration agreement applicable to "all disputes between [Plaintiff] and Chase," including those based on statutory causes of action (such as the ones asserted here) and those involving events predating the amendment (which, even if only in part, also is alleged here). Accordingly, the Court should dismiss the Complaint and compel arbitration.

**I.   FACTUAL BACKGROUND**

    **A.   The Claims**

In her complaint (the "**Complaint**" or "**Compl.**"), Plaintiff summarizes the dispute as follows:

> In April of 2019, Plaintiff Stephanie Einfeld ("Plaintiff'), husband, and children were on a family vacation in Guanacaste, Costa Rica, when her husband's Chase

> Southwest Rewards credit card was stolen and used to make fraudulent purchases. Plaintiff, as the obligor for the credit card, immediately contacted the creditor who issued the credit card, JPMorgan Chase Bank, N.A. (the "Bank"), and notified the Bank that the card was stolen. The Bank said not to worry, and that the Bank would remove the charges. But the Bank did not conduct a reasonable investigation of the unauthorized charges, did not permanently remove the fraudulent charges, and continues to hold Plaintiff liable for unauthorized charges in violation of multiple provisions of [Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*].

(Compl., ¶ 1). Based on those allegations, Plaintiff asserts two claims: (1) violation of 15 U.S.C. § 1643 (the "**Section 1643 Claim**"); and (2) violation of 15 U.S.C. § 1666 (the "**Section 1666 Claim**"). Plaintiff seeks an award of the greater of her actual damages or statutory damages under 15 U.S.C. § 1640(a)(2)(A)(i); several declarations relating to Chase's right to collect on the disputed charges; and an award of attorneys' fees, costs, and pre- and post-judgment interest.

**B.     The Arbitration Agreement**

Plaintiff opened the credit card account at issue in this lawsuit on October 28, 2013 (the "**Account**"), with the credit card that is the subject of this lawsuit ending in 9919. (Declaration of Prashant Singh ("Singh Dec.,"), ¶ 3). By opening her Account, Plaintiff agreed to the terms of Chase's Cardmember Agreement (the "**Cardmember Agreement**"). (*Id.*, ¶ 4; Exhibit A, Cardmember Agreement). Since opening the Account, the Cardmember Agreement has been amended by several changes in terms (the "**Changes in Terms**"). (Singh Dec., ¶ 5; Exhibit B, Changes in Terms). Among those was a change in terms issued on May 18, 2019 (the "**2019 Change in Terms**"). (Singh Dec., ¶ 6; Exhibit B, at 7-12).

The 2019 Change in Terms states that, among other changes to the Cardmember Agreement, effective August 8, 2019, the Cardmember Agreement would include a binding arbitration agreement (the "**Arbitration Agreement**"). (Singh Dec., ¶ 7; Exhibit B, at 7, 10). As to scope, the Arbitration Agreement provides:

2

This arbitration agreement provides that all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court). Arbitration will proceed on an INDIVIDUAL BASIS, so class actions and similar proceedings will NOT be available to you.

\* \* \*

* In arbitration, your rights will be determined by a NEUTRAL ARBITRATOR and NOT A JUDGE OR JURY.

* The procedures in arbitration are simpler and more limited than rules applicable in court.

* Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT.

\* \* \*

For purposes of this agreement to arbitrate, "you" includes any co-applicant or authorized user on your account, or anyone else connected with you or claiming through you; and "we" or "us" includes JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A., all of their parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities and all third parties who are regarded as agents or representatives of us in connection with the account, or the subject matter of the claim or dispute at issue.

All claims or disputes between you and us about or relating in any way to your account, any prior account, your cardmember agreement with us (including any future amendments), any prior cardmember agreement, or our relationship are referred to as "Claims" for purposes of this agreement to arbitrate. Claims include, for example, claims or disputes arising from or relating in any way to transactions involving your account; any interest, charges, or fees assessed on your account; any service(s) or programs related to your account; any communications related to your account; and any collection or credit reporting of your account. Claims also include claims or disputes arising from or relating in any way to advertising and solicitations, or the application for, approval, or establishment of your account. Claims are subject to arbitration regardless of whether they are based on contract, tort, statute, regulation, common law or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, sold, or assigned; you pay us in full any outstanding debt you owe; or you file for bankruptcy. In the event that your account is sold and/or assigned, we retain our right to elect arbitration of Claims by you and you retain your right to elect arbitration of Claims by us.

> \* If you are covered by the Military Lending Act, then you are not bound by this arbitration agreement, and to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law.
>
> The only other exception to the arbitration requirement is that you have the right to file and pursue a Claim in a small claims court instead of arbitration if the Claim is in that court's jurisdiction and proceeds on an individual basis.
>
> If you initiate a Claim in arbitration, no changes to the terms of this agreement to arbitrate that are made after we receive your Claim will apply to that Claim.
>
> This agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

(Exhibit B, at 10-11). Under the Changes in Terms, Plaintiff was permitted to opt out of the Arbitration Agreement, provided she did so in writing by August 7, 2019:

> **YOU CAN REJECT THE BINDING ARBITRATION AGREEMENT. YOU MUST MAIL YOUR REJECTION TO US BY 08/07/2019. PLEASE SEE THE END OF THIS NOTICE FOR INSTRUCTIONS.**
>
> \* \* \*
>
> **Can I (the customer) reject this agreement to arbitrate?**
>
> Yes. You have the right to reject this agreement to arbitrate if you notify us no later than 08/07/2019. You must do so in writing by stating that you reject this agreement to arbitrate and include your name, account number, address and personal signature. Your notice must be mailed to us at P.O. Box 15298, Wilmington, DE 19850-5298. Rejection notices sent to any other address, or sent by electronic mail or communicated orally, will not be accepted or effective.

(*Id.*, at 7, 11). Chase's records show no evidence that Plaintiff opted out of or rejected the Arbitration Agreement. (Singh Dec., ¶ 9).

## II. LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a

4

> civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir.2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The "question of arbitrability—whether a [contract] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998) (quoting *AT & T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 649 (1986)).  The Court's inquiry is limited to evaluating whether (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of that agreement.  *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004). The language of the contract defines the scope of disputes subject to arbitration and the Court must "look to state law principles of contract formation to [determine] whether an agreement to arbitrate has been reached." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir.1997) (citations omitted).  Where an arbitration agreement is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or

the parties' rights and obligations under it." *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*, 636 F.3d 562, 569 (10th Cir. 2010) (citation omitted).

The framework for resolving a motion to compel arbitration is similar to summary judgment practice. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). The moving party has the initial burden of showing that the arbitration clause applies to the dispute and, upon meeting that burden, the non-moving party must "rebut that showing with evidence establishing a genuine dispute as to whether the provisions apply." *Id.*

### III.   ARGUMENT

The Arbitration Clause is valid and applicable. As a result of Plaintiff not opting out of or rejecting the Arbitration Clause, it became a valid and enforceable part of the Cardmember Agreement. *See generally Romero v. TitleMax of New Mexico, Inc.*, 762 F. App'x 560, 565 (10th Cir. 2019) (recognizing the validity of an option for a consumer to opt out of an arbitration requirement). As such, there is no basis for deeming the Arbitration Clause as somehow invalid or unenforceable.

The Arbitration Clause also undisputedly is applicable to this dispute. The Arbitration Clause, which applies to "all disputes between [Plaintiff] and Chase," is "broad," meaning "there arises a presumption of arbitrability." *See Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*, 636 F.3d 562, 569 (10th Cir. 2010). There are no bases for rebutting that presumption either.

To the contrary, the Arbitration Agreement expressly includes disputes "based on . . . statute," such as the claims asserted by Plaintiff. It also includes disputes "whether they arose in the past, may currently exist, or may arise in the future," meaning that the Arbitration Clause

applies to Plaintiff's dispute even though certain events (e.g., the alleged unauthorized charges) occurred before the Arbitration Clause took effect.  *See In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) ("we hold that the language of the arbitration agreement encompassed Plaintiffs' antitrust claim even though it arises out of events that predated the agreement"); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) ("Plaintiff's contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to contract principles which govern arbitration agreements.").  Accordingly, the Arbitration Clause applies to Plaintiff's claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint and compel arbitration.

Respectfully submitted this 7th day of December 2020.

**KUTAK ROCK LLP**

*s/ Daniel Carmeli*
John H. Bernstein (#17358)
Daniel Carmeli (#52880)
1801 California St., Suite 3000
Denver, CO 80202
Telephone: (303) 297-2400
Facsimile:  (303) 292-7799
John.Bernstein@kutakrock.com
Daniel.Carmeli@kutakrock.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this 7th day of December, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

    Daniel J. Vedra, Esq.
    Vedra Law LLC
    1444 Blake Street
    Denver, CO 80202
    dan@vedralaw.com

    *Attorneys for Plaintiff*

    *s/ Daniel Carmeli*
    Daniel Carmeli

8

4850-1013-6275.1